# SUPREME JUDICIAL COURT,

#### FOR THE

## COUNTY OF WORCESTER, OCTOBER TERM 1872, AT WORCESTER.

PRESENT:

Hon. REUBEN A. CHAPMAN, Chief Justice.
Hon. JOHN WELLS,
Hon. JAMES D. COLT, } Justices.
Hon. SETH AMES,
Hon. MARCUS MORTON,

---

## Commonwealth vs. William Weatherhead & another.

An averment, in a complaint for unlawfully fishing in a great pond, that two persons named were the proprietors of the fishes, is supported by proof that they were the lessees of the right of fishing in the pond, although they had associated others with them in carrying on the fishery.

Stocking a great pond with a new species of fish, and closing the outlet with a wire screen, are a sufficient occupation of the pond for the purpose of artificially cultivating and maintaining fishes therein, within the meaning of the St. of 1869, c. 384.

The lessee of a great pond, for the purpose of cultivating useful fishes under the St. of 1869, c. 384, § 9, has the exclusive right of fishing in the whole pond, although he has not occupied any part of it with inclosures and appliances to carry out the purpose of the lease.

The St. of 1869, c. 384, authorizing leases of the right of fishery in great ponds, is constitutional; and the right to fish acquired by such a lease is exclusive, however long a public right of fishing therein has been exercised by the public or by any individual.

Two persons who were unlawfully fishing in a great pond, at the same time from the same boat, may be joined as defendants in a complaint for so fishing, although each was fishing on his own account.

COMPLAINT by Leonard J. Wilson to the Police Court of Milford, that William Weatherhead and Seth Hastings, on September 23, 1871, " did unlawfully fish in that portion of a certain pond (commonly known as Mendon Pond) in which fishes are lawfully cultivated and artificially maintained " by the complainant and John Bliss, and without the permission of the complainant or Bliss, " the proprietors of said fishes."

At the trial, on appeal, in the Superior Court, before *Dewey*, J., the Commonwealth was allowed, against the defendants' objection, to introduce in evidence a lease dated April 1, 1870, by which the commissioners on inland fisheries demised Mendon Pond to the complainant and Bliss for a term of twenty years, " for the purpose of the cultivation of useful fishes," and in which the lessees covenanted " that they will not occupy more than one tenth part of the premises aforesaid, with the inclosures and appliances necessary for the taking and culture of fishes as aforesaid ; that they will not avail themselves of the privilege of this lease to the prejudice of any public rights other than said taking and cultivation ; and that they will not debar ingress to and egress from said premises at proper places and at proper times."

It appeared that in May 1870 an association was formed called the Nipmug Pond Club, consisting of the complainant and Bliss, and eighteen other persons, each of whom paid in $20 ; that no formal transfer of the lease was made by the complainant and Bliss to the association, but the money paid in to the association was used to pay the rent and in stocking the pond with black bass, of which there were none before in the pond ; that the association closed the outlet of the pond by a wire screen and placed a large number of black bass in the pond, where they were propagated in the natural way, and maintained themselves by feeding on the native fishes ; but that there was no other artificial culture or maintenance of fishes ; that neither the complainant, Bliss, nor the associates ever occupied any portion of the pond with inclosures and appliances for the cultivation of useful fishes, but occupied the whole pond as aforesaid.

It further appeared that on September 23, 1871, the defend-ants, being inhabitants of Mendon, without the permission of the

complainant, Bliss, or the other associates, fished in the pond, being together in the same boat, without any other persons, but each of them having his own fish-basket and tackle, and fishing on his own account; that the fish caught by them were pouts, natives of the pond; that for more than sixty years the inhabitants of Mendon had enjoyed and exercised the right of free fishing in the pond, and that the defendant Hastings had fished there fifty-five years, under claim of right, and without objection or interruption from any one.

The defendants asked the judge to rule that these facts did not sustain the complaint; that on them the defendants were entitled to a verdict; and that there was no evidence to warrant a verdict against the defendants, or either of them; but the judge refused so to rule, and ruled that the evidence would warrant a verdict against the defendants.

The jury returned a verdict of guilty, and the judge reported the case for the determination of the full court. If the ruling asked for by the defendants should have been given, the verdict to be set aside, and a verdict of not guilty entered under the order of the court; if on the facts either of the defendants was entitled to a verdict, then as to him the verdict to be set aside, and a verdict of not guilty to be entered under the direction of the court; but if the ruling of the court was sustained, judgment to be entered on the verdict.

*H. B. Staples,* (*F. P. Goulding* with him,) for the defendants. 1. The allegation of proprietorship was not sustained by the evidence. 2. Fishes were not artificially cultivated and maintained in the pond at the time of the alleged offence. 3. The lessees had no right to cultivate and maintain fishes artificially, except in that part of the pond occupied by them with inclosures and appliances, and the defendants had a right to fish in any part not so occupied. 4. If the St. of 1869, *c.* 384, cuts off the public right of fishing, it is unconstitutional. 5. The offence is alleged to have been joint, but upon the evidence it was several.

*C. R. Train,* Attorney General, for the Commonwealth.

WELLS, J.   Most of the questions raised by this report have already been decided, in *Commonwealth* v. *Vincent*, 108 Mass. 441.

The lease embraced the entire pond.   The lessees are properly designated as the proprietors, notwithstanding the fact that other persons, associated with them by an independent arrangement among themselves, have an interest in the conduct of the enterprise.   If the defendants had a license or authority from any of such associates, it was for them to make out their justification.

Stocking the pond with a new species of fish, and closing the outlet with a wire screen, were acts sufficient to show an occupation for the purpose of artificially cultivating or maintaining fishes therein.

The limitation to a portion of the pond " not exceeding one tenth part thereof," applies to the exclusive occupation by structures, " inclosures and appliances."   These must be " so placed as not to debar ingress to or egress from such pond at proper places."   The intermediate provision, " but this shall not affect any public rights to such pond other than the right of fisheries," must have been intended to apply to the whole pond, though not thus inclosed.   This inference is required as well by the terms of the St. of 1869, *c.* 384, § 9, as by the fact that a lease of the whole pond is authorized and made, and is apparently necessary to the full accomplishment of the purpose in view.   By necessary intendment, then, the public right of fishing is taken away in the whole pond, by the lease thereof.   Section 19 does not limit the offence to the act of fishing within the " inclosures " provided for in section 9, in cases where the whole pond is leased ; nor is the erection of such " inclosures and appliances " necessary in order to exclude the public right of fishing in the pond.

We see no ground for the objection of a want of constitutional power in the Legislature to authorize a grant of this public right of fishing.

No private right could be acquired by the exercise for fifty-five years of this public right by the defendant Hastings ; or for more . than sixty years, by the inhabitants of Mendon.

The defendants are properly joined.   They were not only in the same boat, but they must have concurred in act and purpose

in entering the boat, moving it into the pond and placing it in the spot selected for the purpose of fishing.

*Judgment on the verdict.*