BREAUX, C. J.
The right claimed by plaintiff to employ the services of the Cumberland Telephone Company gives rise to the issues before us for decision.
Plaintiff slaughters animals and sells the meat in the public market of the city of Monroe.
He is a lessee of one of the stalls of the market, and pays a rental therefor of $2.50 a day.
The testimony shows that he is a taxpayer. He sues in both capacities; that is, as a tenant of one of the stalls and as a taxpayer.
The market house, a stall of which is occupied by him, was erected with public funds, and is the property of the city of- Monroe.
Eor the greater convenience of the public, all persons engaged in selling fresh meat are prohibited from selling it elsewhere than at the market house.
There is a well-established custom in the *646 city to let those who occupy the stalls of the market retain their respective stalls "as long as they pay the rent. It is also customary to sell the good will of these stalls, as well as other interests which a tenant has who wishes to sell.
It appears that the city authorities refused to permit the Cumberland Telephone Company to place its phones and service wires in the market house, and they refused to permit it to render telephone service to plaintiff and other occupants of stalls, and refused to allow it to place any of its phones in any of the public buildings.
Petitioner says that the Cumberland Telephone had a larger number of subscribers, and, besides, that it extends its service outside of the city limits, while the other company, known as the Home Telephone Company, did not extend its service to any great distance outside of the city limits.
Petitioner says, in substance, that he is anxious to have the service of this company, as it affords him better opportunity to properly conduct his business; that without the phone he will suffer loss of trade and profit, which he fixes at a round sum annually. He specially avers that the Home Telephone Company is treated with particular favor, and that the continued privilege it enjoys is a rank monopoly.
It appears that he tendered the rental price to the Cumberland Telephone Company, and he says that this company was compelled, in view of the attitude on the subject of the authorities of Monroe, to decline to accept the money, although anxious to perform the service. It appears, further, that the Cumberland Company applied to the committee in charge, appointed by the council, for permission to extend its services to the market house; that this committee refused to permit this company to place its phones and wires and connect petitioner’s stall with its system; that all of this caused him (plaintiff) a damage, and was a violation of his rights.
The following about covers all the facts of the case of any importance at all, and the statement, therefore, relieves us of the necessity of detailing them at length, viz.:
(1) The Home Company was specially selected by the local authorities to render service at the market house.
(2) The Cumberland Telephone Company was excluded from that service at that place.
(3) The Cumberland telephone service, as well as that of the Home Telephone Company, is highly useful in families; that it enables them to order the daily market.
(4) The Cumberland Telephone Company, because of the alleged discrimination, has not the same availability and convenience to those who patronize it as the Home Telephone Company.
There are charges brought by plaintiff of unseemly favoritism on the part of the city authorities, and of motives of interest, which we will not dwell upon. The ease may be decided without special reference to them at any length.
Defendant’s contention in the first place is that plaintiff is not a lessee; that he is only a licensee, occupying a stall under the market house ordinance. In the second place, respondents set up in their answer that the city furnishes to plaintiff sufficient telephone service, the cost of which is included in the rate per diem charged to him for the use of the stall and the market house.
Petitioner seeks to have the city enjoined from interfering in any manner with petitioner and the Cumberland Telephone Company in installing its wires and instruments in the market house and plaintiff’s place of business, and prays that the contract between the said city and the Home Telephone Company be declared ultra vires and void; also all ordinances and the acts of all officers of the city which have the effect of conferring upon the Home Telephone Company the exclusive right to do business in the market and public buildings.
*648 The judge of the district court rendered judgment enjoining the city or any of its officers from interfering in any manner with plaintiff and the Cumberland Company from placing its instruments and wires in the stalls of the market house.
In order to have them at hand for reference, two excerpts from the market ordinance, bearing upon the subject, are reproduced in the margin.[1]
Is the occupant of a stall a mere licensee or a lessee? is the first question which arises in considering defendant’s exception of no cause of action.
If he is a lessee, he unquestionably has a cause of action to protect his possession and whatever rights he may have acquired from his lessor.
The ordinance of the city, under' which plaintiff has continued in possession since a number of years, provides for letting out the stalls of the market, as will be seen by a reference to the italicized words of the ordinance reproduced in the margin of our-opinion.
The city is bound by the terms of its own lease and by conditions which are clearly to be implied therefrom.
There was nothing illegal in thus letting out the stalls, for decisions of this court sanction the letting out of stalls, and the use of the word “rent,” as well as all it implies.
A similar question was considered, and the decision was made to rest upon the rights which the lessee had acquired to the stall. Succession of Journe. 21 La. Ann. 391.
In another ease plaintiff had enjoined the defendant from collecting certain market fees which the city demanded as rental of certain stalls in the public market. In that case it was decided that the rental could be recovered, and in substance the court held that the stall had been leased. Barthel v. New Orleans, 26 La. Ann. 340.
Again, a similar claim was considered in another case in the light of a rental. New Orleans v. Stafford, 27 La. Ann. 419, 21 Am. Rep. 563.
From the foregoing decisions, we conclude that market stalls can be rented, as was done in this case.
We have no hesitation in arriving at the conclusion that plaintiff had a right of action as tenant of the stall.
In the next place, plaintiff’s contention is that he has also a right to stand in judgment as a taxpayer.
This right is not quite so clear as the one upon which we have just passed. It does not seem to us that plaintiff has an undoubted right to champion the cause of the Cumberland Telephone Company which is amply able to appear for itself..
We pass to the second ground (of no cause of action) urged by plaintiff, and hold that the exception of no cause of action was properly overruled on the first ground.
We are brought to the merits of the ease.
The plaintiff, as well as others similarly situated, can protect his business interests as he .sees fit, provided he violates no law and respects the rights of others.
It does appear in this case that plaintiff is denied a right to contract as he pleases in his interest; and this right is denied in order to arbitrarily grant a privilege Wthich the city and its officers had no right to do, for the purpose, we are led to infer, to advantage another company.
*650 A city has no right to exclude a competing company in order to carry out a local policy, if there be any policy at all about the act of exclusion. Every citizen should be left to exercise his right. Of selection to employ one, or the other, or both.
Private legal rights, exercised within market limits, cannot be denied under the guise of regulation.
It is not charged that the telephone company whose services the plaintiff desires to secure has violated or will violate any of the regulations of the city in rendering service required by plaintiff.
Why, then, may not this humble butcher, if he thinks it is to his interest, be permitted to exercise his volition in the matter? It is a personal right, with which there should be no interference. Even if it were the exercise of a mere fancy, he should be permitted to exercise it, provided he violates no law and inconveniences no one.
But it is not a fancy, for he shows that the service he wishes is needed in his business.
We are constrained to hold that the right cannot be legally denied.
It must be borne in mind that the business in question is not that of the city. It is the business of the butcher, and, after having paid for the stallage and complied with all rules and regulations, he should be at liberty to employ the two phones, as it serves his interest.
The plaintiff employs the Home Telephone Company in order to be brought in telephonic communication with the consumers who employ this phone. There is no good reason why he should not be permitted to employ the Cumberland Telephone Company in order to be placed in communication with its patrons as well.
No arbitrary distinction should be made, and it certainly here appears that one is sought to be made.
There should be no local legislation favorable to one industry to the exclusion of another. Each has a right to live and to serve its patrons.
The telephone company is a quasi public corporation when it serves the public. It is as public as a telegraph company, and both are classed among the quasi public corporations. English and American Enc. of Law, verbo “Telegraph and Telephones”; Freund, Police Power.
It is subject to regulation. It cannot take undue advantages, but for that reason it should have the right to carry on its business, as well as other corporations have the right to carry on theirs of a similar character.
There is no question of public health or morals. The occupation of the telephone company is legal and useful. The power to regulate cannot be resorted to, to the end of suppressing legal and useful occupations.
We have considered the subject to the extent that plaintiff is concerned, and no further. From that point of view the action of the authorities in excluding the Cumberland Company cannot meet with our sanction.
As a legitimate industry, precisely similar to that carried on by its rivals, it should receive precisely the same protection, and not be made liable to any greater burdens or responsibilities.
One must be treated as the equal of the other. Neither is entitled to partial consideration or the least favor from the public authorities in its relation to patrons offering to employ one or the other.
For reasons stated, the judgment appealed from is affirmed.

“Be it ordained that the following shall be the rate for rent of stalls, stands, spaces and other places in the market for the sale of various articles:
“For butchers’ stalls No. 1 to 8, inclusive, each per day, two and a half dollars.
“For butchers’ stalls No. 9 to 11, inclusive, each per day, two dollars.”
And another excerpt from another section of the same ordinance, to wit:
“That no electric or telephone wires shall be permitted to be run into the city market house after completion unless permission be granted by the building committee.”