(41 South. 487.)

No. 15,992.

STATE ex rel. BOARD OF LIQUIDATION OF CITY DEBT v. BRIEDE, City Treasurer.

(May 7, 1906. Rehearing Denied June 4, 1906.)

1. MUNICIPAL CORPORATIONS—NEW ORLEANS BOARD OF LIQUIDATION — CUSTODY OF FUNDS.

The proceeds of the 1 per cent. tax should be paid over to the fiscal agent or depository of the board of liquidation, as directed by that bond and to the credit of the board.

2. SAME—STATUTORY PROVISIONS.

The purpose of section 3 of Act No. 111, p. 147, of 1890 is separate and distinct. The instruction touching the deposit of the fund therein referred to is special and direct.

3. SAME—ACTION OF BOARD—QUORUM.

There was no quorum at the meeting of September 1, 1905, at which a depository was selected by the board.

4. SAME—ABSENCE OF QUORUM—EFFECT.

The question was jurisdictional—it went to the power vel non of an illegal quorum. The relator had the right to stand in judgment to have it determined where the fund should be deposited. He had the further right.

5. SAME—OFFICERS—REPRESENTATION BY DEPUTY.

Record evidence should be kept of the fact that, on account of the "absence" of one of the executive officers, the comptroller, his chief clerk or deputy acted.

6. PRINCIPAL AND SURETY—CONTRACT.

A contract, entered into to secure funds deposited, and the accompanying bond, should clearly set forth the extent of the liability of principal and security.

7. MUNICIPAL CORPORATIONS — ACTION OF OFFICERS.

No changes should be made before the board has acted through a legal quorum.

Provosty, J., dissenting.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; George Henry Théard, Judge.

Application for mandamus by the state, on the relation of the board of liquidation of the city debt, against Otto F. Briede, as city treasurer, to compel respondent to pay over certain funds to relator. From a judgment for relator, respondent appeals. Reversed.

Samuel Louis Gilmore, City Atty., for appellant. Howe, Spencer & Cocke, for appellant intervener. Miller, Dufour & Dufour, for appellee.

BREAUX, C. J. The relator prayed for a mandamus to issue, commanding the treasurer of the city of New Orleans to pay to it, or its fiscal agent, the proceeds of the 1 per cent. tax.

Judgment was pronounced in its favor, from which respondent and intervener appeal.

The judgment in question directs that the tax in question be paid over to the Canal Louisiana Bank & Trust Company, alleged depository of the fund.

On appeal, the relator answered and asked that the judgment be amended by directing the respondent treasurer to pay the amount over to it, the relator, and, in the alternative, to the Canal Louisiana Bank & Trust Company.

The plaintiff board was established in the year 1880, and in the same year the Louisiana National Bank was elected its fiscal agent, and in the year 1896 the Canal Bank was elected to be joint fiscal agent of the board.

From 1880 to November, 1905, the proceeds of all taxes collected by the city treasurer for the board of liquidation were delivered

to, and deposited with, its fiscal agent. In November, 1905, as relates.to deposits, matters came to a stop. The treasurer notified the board of liquidation that, advised by the city attorney, he would pay the amount of the tax in question to the fiscal agent of the city of New Orleans.

Thereafter a writ of mandamus was sued out by the board of liquidation to compel the city treasurer to turn over the proceeds to it or to its fiscal agent, the bank before named.

The city treasurer, respondent here, and the Interstate Trust & Banking Company, in their pleadings, traverse relator's right to designate its depository, and specially aver that the Canal Louisiana Bank & Trust Company cannot be selected as depository by reason of the fact that, at the time of the averred selection, five of the members of the board of liquidation, constituting a quorum, were stockholders and officers in the Canal Louisiana Bank & Trust Company, and pecuniarily interested in its selection as custodian of said funds.

The relator, with the view of meeting this contention, averred that it is expressly intrusted by statute with the control and administration of the bonded debt of the city of New Orleans, and with the payment, with interest thereon, and that, under the statutes, the treasurer is required to turn over to it (relator) the proceeds of the 1 per cent. tax in question; that the proceeds of this tax are under its care and keeping; and that the depository's right cannot be attacked collaterally. While, on the other hand, the intervener, that is, the Interstate Trust & Banking Company, sets up that it is the fiscal agent of the city of New Orleans, and that it is its right to have the proceeds in question deposited with it; and it also avers that the proceeds of this tax annually exceed the sum of $500,000, and that the custody thereof is worth to it, at least, the sum of

$5,000 during the unexpired term of its fiscal agency.

The record does not disclose whether the fiscal agent of the city of New Orleans was or was not satisfactory to the board; nor does it appear that any of the banks mentioned by relator or by respondent were unsafe or improper custodians. They are equally responsible, as we understand.

The first proposition before us for discussion is that the 1 per cent. tax, levied and collected in accordance with Act No. 110, p. 144, of.1890, should be paid over to the board of liquidation directly.

Relator, in support of its contention, invokes the force of contemporary construction, which grows out, as it urges, of the fact that these funds to November, 1905, had always been paid to it; that the officers charged with the execution of the statute had from the first always construed it as requiring the deposit of the funds to be made with relator.

Relator quotes from several decisions in which the maxim "contemporanea expositio est fortissima in lege" was held as controlling of the points at issue in the respective cases. Succession of Connolly, 5 La. Ann. 753.

Beyond question, great weight should be given to contemporaneous construction.

We leave the question of contemporaneous construction with the statement that the officers have deposited the fund in question, as averred by relator. But contemporaneous construction invoked is not determinative of the issues for reasons that will be stated.

We take up for decision the different views taken by relator and appellee, on one hand, and respondent and appellant, on the other, touching the proper interpretation to be placed on three of the sections of Act No. 110, p. 144, of 1890.

That statute provides, in its seventh section (page 149) that the proceeds of the 1 per cent. tax shall be paid over to the fiscal

agent, or depository of the board of liquidation, to the credit of said board, day by day, as the same is collected, and that the city, or its officers, shall not have the custody or control of the tax, except as provided for in the statute.

The board, under the terms of that section, selected the Canal Louisiana Bank & Trust Company as its depository.

The objection by the appellant and respondent to the selection of the bank just named is especially that, taking the three sections together, the taxes in question should be deposited with the fiscal agent of the city and nowhere else; and, in the second place, that the quorum of the board was illegal when the bank before named was selected, for the vice president of this bank and one of its directors were part of the quorum. That, as these members were interested, it is against public policy to permit public officers, charged with the duty of selecting a safe depository for public funds, to select for such depository a bank in which they are officers and stockholders, since such selection involves a conflict between their duty and private interest.

We will have to divide the questions to the end of deciding them. This being done, we take up the contention of respondent that the proceeds of the 1 per cent. tax should be deposited with the fiscal agent of the city.

In three of the sections of the cited act reference is made to the deposit of the board's funds. The third section of the act refers to the proceeds from the sale of constitutional bonds, an independent matter. These bonds are set apart for a purpose mentioned in the act, and the direction to deposit them with the city fiscal agent is not pertinent to the issue here.

Section 11 of the act (page 151) provides:

"Their funds shall be deposited with the fiscal agent of the city of New Orleans or with some chartered bank in the city of New Orleans, selected by said board."

In the alternative the board of liquidation has the authority to select some chartered bank, so that, even under this section, the board is not without authority to select its depository.

Section 7 of the statute deals exclusively with the 1 per cent. tax, the deposit of which is now at issue. We do not feel authorized to write, in section 7 of the statute, the words, viz., "city of New Orleans," after the words, "fiscal agent," as the quoted words, "fiscal agent," do not, as we read, refer to the fiscal agent of the city of New Orleans.

We make summary of the cited act, supra, as follows: The funds, under the third section, received by the board from the sale of constitutional bonds, shall be immediately deposited with the fiscal agent of the city of New Orleans, or, if the fiscal agent is not satisfactory in the opinion of the board, then into the chartered depository selected by the board. This refers to the "bond sale funds" used solely and exclusively for the purpose stated in the section, and therefore it is not pertinent to the issue whether the board has or has not expressed disapproval touching the city's fiscal agent.

The next section, to which we have already referred on the subject of deposits, refers exclusively and solely to the 1 per cent. tax. The last section of Act No. 110 (page 152) is general in terms and does not control the particular provision of section 7. A general provision does not change a particular or special direction in regard to a particular matter.

We come to the second of the divided questions before referred to, which involves the charge that the depository was favored owing to the relation existing between some of the members of the board with it (the depository). We will not discuss the subject at any great length. When considered in its last analysis, the amount involved is not large, not large enough, at any rate, to in-

fluence any one, but there is a principle which we are constrained to notice, and which forces us to the conclusion that the board's action in selecting its depository must be set aside. The quorum by whom the selection was made was not legal, and it follows that the resolution adopted in selecting the Canal Louisiana Bank is of no effect. It can have no legal result.

The acts of the board are quasi judicial.

The duty, quasi judicial, is defined generally as a duty lying in the judgment or discretion of an officer other than a judicial officer. Throop, Public Offices, § 533.

The function is not strictly judicial, nor, on the other hand, ministerial. It is midway between the two; that is, quasi judicial. When an officer is charged with looking into and acting upon facts "not in a way which it specifically directs, but after a discretion, in its nature judicial, the function is termed quasi judicial." Bishop on Contract Law, § 785 et al.

"An act is judicial when it requires the exercise of judgment or discretion by one or more persons or by a corporate body, when acting as public officers in an official character in a manner which seems to them just and equitable." Grider v. Tally, 77 Ala. 422, 54 Am. Rep. 65; People v. Supervisors, 35 Barb. (N. Y.) 414.

It is evident that the members were charged with a great public duty.

We feel at liberty to say that, in the discharge of these functions, the credit of the commonwealth has felt its good influence.

The power being quasi judicial, decisions touching the exercise of powers, judicial and quasi judicial, are pertinent to the issues. There are a number of authorities in which it has been laid down as a principle that even the appearance of interest should be avoided.

A question of interest was before the court in Swayze v. Monroe, 116 La. 643, 40 South. 926, though the interest was not a matter of moment, and the case was decided on other issues. It was nonetheless sufficiently referred to to render it evident that the appearance of interest did not meet with approval in deciding the issues.

"Contracts opposed to the public policy of the state cannot be enforced." Teal v. Walker, 111 U. S. 242, 4 Sup. Ct. 420, 28 L. Ed. 415.

In Succession of Jan, 43 La. Ann. 924, 10 South. 6, the account of the executor had long since been homologated. On appeal, appellant complained of the district judge's action in having homologated a claim for a fee which had been paid him before he was promoted to the bench, and to which no one objected. Among a number of claims, his was carried. It was urged that there was a warranty, a shadowy one, it must be said. The court attached no importance to it, but nonetheless said that there should be no pretext for unreasonable suspicion, and called attention to the proneness of human nature, always quick to assert itself, that "praise is without feet, but the wings of blame are swifter than the air." In the decision, the court said that the district judge was disinterested, that the interest was too remote to influence any one; still there was a remote interest. The judgment was annulled, and the case was remanded.

While there is here no question of wrong either directly or indirectly, it is best, in the interest of all concerned, to set aside the proceedings to the extent that the depository was selected. The situation was fiduciary. It should not be possible to refer to the most remote or infinite simal interest.

Defendant and intervener further charge that there was no legal quorum at the meeting of September 1, 1905, at which time the depository was selected, for the additional reason that the chief clerk of the comptroller was not entitled to sit as a member of the relator board. The comptroller was temporarily absent, we understand. The charter of the city provides that the chief clerk or deputy of each department shall represent his principal in case of suspension, absence,

resignation, or death. This does not enable the deputy to act if his principal is only casually absent. If the comptroller was absent on the day that the depository was selected, we have not succeeded in finding a mention of it in the portly record of the appeal. True, at the bar it was said that he was absent, and in oral argument that was, as we understand, substantially admitted. We only wish to say that in our view of the statute there must be something in the nature of permanent absence to enable the deputy to act, and a record should show the absence. The legal reasons for acting must appear and be satisfactorily established.

Learned counsel for relator, in substance, states that, even if the election of the Canal Louisiana Bank as depository be irregular, the city treasurer cannot decline to perform his ministerial duty in a collateral proceeding, in which the bank is not a party; that the treasurer was without right to decline to turn the proceeds of the 1 per cent. tax over to it, on the ground he urges, that is, the alleged interest of two of its members, and other grounds; that the duty of the officer was ministerial; that the city of New Orleans might and would have the right to contest such an election, but that she would have to bring her action against the bank. We do not agree with that view.

Relator's grounds are stated at some length. As stated above, we have abbreviated them.

The evidence shows that the selectors and the selected have an interest. It is against the policy of the state to enforce a selection made, when there is an interest involved even if under circumstances showing that it had no influence.

There is no dissent expressed from the view that the interest here is not susceptible of judicial approval. The attack should be direct and not collateral is the only position taken in the dissenting opinion.

Let us see:

The relator has some authority to inquire into the legality and the regularity of the resolutions and motions of the board in so far as he is concerned.

The question relates to the power and jurisdiction of the board to act through an illegal quorum. He (relator) can stand in judgment in collateral proceedings to prove the illegality.

It is the duty of an officer to see to it that the funds he pays over are placed in the hands of those entitled to it under the statutes.

The funds are public, and unlike a private interest under the circumstances. There must be no illegality, and, if there is, the illegality should receive early consideration by the courts.

In the case of Capdevielle, Mayor, v. New Orleans & San Francisco R. R., 110 La. 904, 34 South. 868, the action of the mayor in energetically seeking judicial action touching a public interest was approved.

We think that the relator has the right to stand in judgment to raise question of authority on the grounds here urged by him.

We will go one step further in this case and state that, if we had arrived at a different conclusion from what we have, we, nevertheless, would not have found our way clear to recognize intervener's right to the funds in question as depository of the 1 per cent. tax. Its contract with the city and the bond it furnished were not entered into and furnished so as to cover the proceeds of that tax. The bond specially refers to other funds and does not include those deposited under a section of the statutes not in contemplation of the parties at the time that it was signed. No reference whatever is made to the 1 per cent. tax either in the contract or in the bond.

For reasons assigned, it is ordered, adjudged, and decreed that the judgment of the

court a qua is avoided, annulled, and reversed. It is further ordered, adjudged, and decreed that the right of the board of liquidation to receive the 1 per cent. tax from day to day as collected, and to place it in the depository of its own selection by a quorum legally constituted be, and the same is hereby, maintained. And it is further ordered, adjudged, and decreed that, until that selection be legally made, the status quo be maintained; the board of liquidation to pay the costs of both courts.

MONROE, J. I concur in the opinion and decree, save that I think the fiscal agent referred to in section 7 of Act No. 110, p. 149, of 1890, is the fiscal agent of the city of New Orleans.

PROVOSTY, J., dissents, holding the legality of the appointment of its fiscal agent, by the board of liquidation, cannot be collaterally inquired into.

NICHOLLS, J., absent.