JACK H. LONGWELL, by C. A. LONGWELL, his Next Friend, Appellant, v. KANSAS CITY, MIS-SOURI, Respondent.

Kansas City Court of Appeals, May 20, 1918.

1. NEGLIGENCE: Municipal Corporations. Kansas City is the owner of a pleasure ground called "Swope Park" and maintained therein, among other forms of amusement, Shetland ponies for a profit, and invited all children to ride them for their pleasure and amusement. The agent of the city negligently put plaintiff upon the back of one of the ponies and started him off unattended and plaintiff was thrown by the pony and injured. It was *held* that the city having undertaken to provide these ponies for the amusement, recreation and pleasure of children, it was liable for negligence of its agents and servants in handling such children and ponies.

2. ————: Ultra Vires: Charter of Kansas City. The provisions of the charter of Kansas City prohibiting "shows" or "exhibitions" in parks or public grounds has no application to children riding on Sheland ponies in such parks. The riding of ponies by children for pleasure, amusement and recreation in public parks is not a "show" or "exhibition."

Appeal from Jackson Circuit Court.—*Hon. Clarence A. Burney*, Judge.

REVERSED AND REMANDED.

*Kimbrell & O'Donnell* for appellant.

*J. A. Harzfield* and *Francis M. Hayward* for respondent.

BLAND, J.—This is an appeal from the action of the court in sustaining a demurrer to the petition in an action for personal injuries. The following negligence was alleged; that on or about the 29th day of March, 1896, defendant became the owner of a pleasure ground and park, called "Swope Park," by virtue of a deed of conveyance delivered to it by one Thomas H. Swope,

which was accepted by defendant; that one of the conditions of said deed was that the land "shall be used as a public pleasure ground or park forever;" that on the 29th day of August, 1916, defendant was maintaining said ground as a public park and was maintaining restaurants, boating, pleasure grounds, zoological gardens and Shetland ponies thereon. That defendant had established a rule or custom by virtue of which, and for a profit to it, all children visiting said park were invited to ride upon said ponies in said park for their enjoyment, recreation or amusement, paying to it as a fee or charge therefor the sum of five cents; that on said day plaintiff was in said park for the purpose of obtaining the recreation and air provided by said defendant therein; that defendant's agent and servant, in accordance with said rule or custom invited plaintiff to ride upon one of said ponies and that plaintiff paid therefor the required fee of five cents; that thereupon said agent and servant seized the plaintiff and negligently placed him on the back of one of said ponies, whereupon said agent and servant negligently turned said pony loose, unattended, in the enclosure where it was kept and it became unmanageable and ran, jumped and cavorted so that plaintiff was thrown upon his back on the ground, resulting in plaintiff's injury; that plaintiff at the time was too immature and inexperienced to ride upon or guide said pony unattended with reasonable safety to himself; that plaintiff's legs were too short and the back of said pony too broad and round to enable plaintiff to maintain his seat thereon; that said pony had a vicious and unmanageable disposition and that all of said facts which caused the injury were known to defendant's agent or could have been known, etc.

It is the contention of the defendant that the act of the city in maintaining said ponies and in allowing plaintiff to ride thereon, under the facts and circumstances alleged, was *ultra vires.* To this plaintiff makes two answers; first, that the act was not *ultra vires;* and second, that the city in taking hire for said ponies is

199 M. A.—31.

estopped from setting up the claim of *ultra vires*. The second contention of plaintiff we need not pass upon. There is no contention in this case at this time but that the city, if it was acting within the powers granted to it in its charter to maintain a public park, is liable to plaintiff for the injuries sustained by him. The question presented to us is whether or not the maintenance of said ponies for the purposes described in the petition was within the power of the city.

It is said in State ex rel. Wood, Attorney General, v. Schweickardt, 109 Mo. 1. c. 510, that ''a park is variously defined to be 'pleasure ground in or near a city set apart for the recreation of the public;' 'a piece of ground inclosed for purposes of pleasure, exercise, amusement or ornament' . . . 'a place open for eveyone.' '' There is no doubt but that in order to provide means for recreation, air, exercise and amusement, etc., in a park a city may either secure the services of someone to provide these means or may provide then itself. And if the city in this case, in providing the Shetland ponies for recreation of children, was within the legitimate sphere of its authority then the discretion vested in it in making such provision is free from outside interference and not subject to judicial revision or reversal. [State ex rel. v. Schweickhardt, supra, 1. c. 511.]

We have made a diligent search in the books but have found but two cases decided by the courts in this country involving the question as to what is within the legitimate exercise of the discretion vested in a city in affording pleasure, exercise and amusement, etc., in public parks. One of these cases was decided by the Supreme Court of our State, cited supra, wherein it was held that the city was within its rights in leasing or renting space in a park for the purpose of furnishing refreshments to those visiting it; the other was decided by the Supreme Court of West Virginia, where it was held that a lease by a city of a part of a public park to improve it and use it at times for training and running race horses, for a rental to the city, reserving

access at times to the public for riding and driving on the track, was a legitimate use of the park and not an *ultra vires* act. [Bryant v. Logan, 56 W. Va. 141.] The court in the latter case, l. c. 145, states that regardless of the broad powers in this connection granted the city by the Legislature, nevertheless, the act of the city complained of was not an unlawful diversion of the park, the court saying, "racing horses is enjoyed by thousands and thousands of people, high and low, rich and poor. The use of the park for this purpose would give people recreation and pleasure, and it is not foreign to the object for which it was purchased," it having been acquired "for the health, pleasure and comfort of the people."

Parks are particularly inviting to children who live in cities. It is a matter of common knowledge that cities go to great expenses to condemn valuable property upon which there are improvements for the purpose of affording parks that are devoted exclusively to play grounds for children. And while public parks usually are resorts for persons both old and young, it may be said that they are particularly designed for the amusement and recreation of children and a place where they may go to play in the open air and light. It is hard to imagine a more appropriate way, if properly conducted, for the city to provide exercise and enjoyment for children than was afforded in this case. We think that the use of a park for the purpose of providing Shetland ponies of reasonable gentleness upon which children may ride, properly attended, either for a consideration or *gratis*, afford, beyond doubt, exercise, amusement, recreation and pleasure for such children, and is not foreign to the object for which public parks are maintained, and that the city, having undertaken to do these things is liable for negligence in the doing of them.

It is contended by the defendant that the maintenance of these ponies in the manner described in the petition is prohibited by defendant's charter. In support of this contention it refers us to section 39, article 13, of the Kan-

sas City Charter, 1909, which provides, among other things, as follows:

"And no shows or exhibitions of any character or kind shall be allowed or given in any park, square, or public ground of the city under control of said Board; but this shall not inhibit such musical entertainments, concerts and zoological or other exhibits as may be pro-vided by the Board of Park Commissioners in any park, for the use and enjoyment of the public and for strictly park purposes."

Defendant contends that in this provision of the charter the only kind of "shows" or "exhibitions" that may be maintained in a public park in Kansas City are those provided by musical instruments, concerts and zoological or other exhibits of the same general kind and character. We fail to see how this provision has any application to the matter of children riding on Shetland ponies in any such park. The riding of a pony either for hire or *gratis,* we think, is not a show or an exhibition. Webster defines a "show" as "That which is shown, or brought to view; that which is arranged to be seen; a spectacle; an exhibition; as a traveling *show;* a cattle *show.*" And an "exhibition" as "That which is exhibited, held forth, or displayed; also, any public show; a display of works of art, or of feats of skill, or if oratorial or dramatic ability; as, an exhibition or animanls; an exhibition of pictures, statutes, etc.; an industrial exhibition." A show or exhibition is commonly understood to be something that one views or at which one looks and at the same time hears. We fail to see how the riding of ponies, such as described in the petition in this case, can be said to be a show or exhibition.

We do not feel that the city in doing the things described in the petition was acting *ultra vires,* and for this reason the judgment will be reversed and the cause remanded and is so ordered. All concur.