## ARTHUR T. NELSON v. BYRON J. DeLONG.[1]

December 18, 1942.

No. 33,266.

[1]Reported in 7 N. W. (2d) 342.

*Arthur T. Nelson, pro se.*
*Joseph C. Vesely,* for respondent.

PETERSON, JUSTICE.

In this action plaintiff seeks numerous kinds of relief against defendant for acts done by him as mayor of the village of Deep-

haven alleged to be violations of plaintiff's riparian rights in and to the shore and adjacent waters of St. Louis Bay of Lake Minnetonka, a navigable body of water in Hennepin county. Plaintiff claims that the village by requiring the acts to be done and the defendant by doing them pursuant to such requirement were joint wrongdoers, and that consequently this action may be maintained against him separately without joining the village as a party defendant. Below, the decision was against plaintiff, and he appeals.

Because the record is sketchy and in many respects inadequate for lack of explicit statement and of plats to explain the evidence, we have had considerable difficulty in understanding the evidence. Consequently, we have considerable misgiving as to the entire accuracy of our statement of the facts.

Plaintiff is the owner of 11 lots in platted areas, one of which is known as Deephaven Park and the other as Deephaven Park, Subdivision No. Three (3). The lots are located several blocks from the shore line of the lake. Plaintiff claims the riparian rights in question as appurtenant to his land under certain deeds of conveyance.

One Gibson was the original owner of a large tract of land, including that here involved, on the east shore of St. Louis Bay. On July 22, 1887, he conveyed to a railroad company a right of way across the land. The deed contained a reservation, subject to certain provisions not here material, "for the construction, maintenance and enjoyment of private docks, platforms and boat landings and for access thereto and egress therefrom of persons on foot, the use of the shore of Lake Minnetonka and of the land covered with water adjacent thereto, outside of or in front of the land hereby conveyed."

Apparently the railroad right of way ran parallel to but was not at all points adjacent to the lake shore. Subsequently Gibson conveyed to plaintiff's predecessor in title the remainder of the tract. Later the owner platted the portion lying east of the part

conveyed for a railroad right of way. There are some 520 lots and 200 owners. There are streets extending to the lake, but none of the lots in the platted area abut on the lake shore. When the lots were sold and resold, each deed of conveyance contained a provision that the conveyance included the use and enjoyment on equal terms with other vendees of the grantor of the riparian rights and privileges extending from the boathouse of the Deephaven Park Land Company at Lake street to the docks of the Minneapolis & St. Paul Suburban Railway Company as the same were held by the grantor under the Gibson deed of July 22, 1887, to the railroad company. All deeds recited that "the foregoing covenant, warranty and restriction shall run with the land." There are about 373.7 feet of shore line between the points mentioned.

In 1932 the village by condemnation proceedings acquired for park purposes title to the part of the shore land formerly owned by Gibson which lay between the platted area and the lake. The land thus taken included all the shore line of 373.7 feet in and to which the riparian rights pertained and the land conveyed by Gibson to the railroad for a right of way. The taking was, however, by its terms subject to the rights of all owners of real property of the village of Deephaven conveyed to them by deed to the use and enjoyment of the riparian rights and privileges on St. Louis Bay within the area referred to. Later the railroad quitclaimed its right of way to the village.

Enough appears from the record as supplemented by the oral explanations made on the argument to show that, because a large number of persons use the beach and adjacent waters for purposes of boating and bathing, regulation of some kind was necessary. A voluntary association, known as the Deephaven Park Improvement Association, presumably composed of interested lot owners, undertook to regulate the use of the waters in question. It provided boat docks, for which it charged two dollars per boat for a season. In 1936 plaintiff paid the fee and was assigned boat slip No. 19 for the season.

Later it appears that the village undertook to regulate the use of the shores of the park and the waters adjacent thereto. A Mr. Johnson apparently had a right to maintain a boathouse on 10.7 feet of the shore line. The village set aside 159 feet southerly from Lake street to the Johnson boathouse for a public boat dock and 135 feet southerly of the Johnson boathouse for a bathing beach. No regulations were adopted for the 69 feet southerly of the bathing beach. The lands mentioned included all those in which plaintiff claimed riparian rights under his deeds.

Upon the 159 feet allocated for the purpose, the village constructed a boat landing or dock divided into 30 spaces or slips for docking and storing boats. Insofar as appears, the only watercraft using the waters in question were pleasure boats. During the 1939 season permits were issued for the use of 28 of the 30 slips. Apparently the dock furnished facilities adequate for the demand there existing.

On June 13, 1939, the village passed an ordinance prohibiting the construction or erection of any wharf, boathouse, or other structure for the purpose of docking boats or other watercraft upon any part of the shore lands owned or controlled by it. The ordinance also prohibited the parking or placing of any boat or watercraft, except at the dock owned and maintained by the village, for which a permit costing two dollars per boat for a season was required, in, upon, or adjacent to the park in question or any other lands owned by it.

Defendant as mayor of the village caused the ordinance and other regulations, the precise nature of which are not made to appear, to be enforced. He collected the fees for dock permits, which he turned over to the village treasurer. At his instance, the village marshal prevented plaintiff from docking his boat at the village boat dock because plaintiff failed to obtain the necessary permit to use the dock. The 135 feet of bathing beach was roped off and boats were excluded from that area. It is these acts of defendant which plaintiff claims constitute an interference with his riparian rights.

The village is governed by L. 1885, c. 145, which so far as here material in § 21 thereof provides that the village council shall have the power to enact, amend, and repeal ordinances as its members shall deem expedient for the purposes:

"Eighth—To control and protect the public buildings, property and records * * *.

* * * * * *

"Eleventh—To lay out, open, change, widen or extend * * * parks * * * and to * * · * improve, repair or discontinue the same * * *.

* * * * * *

"Twenty-sixth—To establish harbor and dock limits, and to regulate the location and construction and use of all piers, docks, wharves and boat-houses on any navigable waters, and fix rates of wharfage.

* * * * * *

"Twenty-eighth—To ordain and establish all such ordinances and by-laws for the government and good order of the village, the suppression of vice and immorality, the prevention of crime, the protection of public and private property, the benefit of trade and commerce, and the promotion of health, not inconsistent with the constitution and laws of the United States or of this state, as they shall deem expedient; * * *"

For purposes of decision, we shall assume that plaintiff has riparian rights under the deeds as claimed by him. In this connection we shall assume, as we have repeatedly held, that rights in the shore line and submerged lands along the lake shore may be separated and dissociated from littoral or riparian lands and transferred to and enjoyed by persons having no interest in the original riparian estate. See Bradshaw v. Duluth Imperial Mill Co. 52 Minn. 59, 53 N. W. 1066; Gilbert v. Eldridge, 47 Minn. 210, 49 N. W. 679, 13 L. R. A. 411; Miller v. Mendenhall, 43 Minn. 95, 44 N. W. 1141, 8 L. R. A. 89, 19 A. S. R. 219; Hanford v. St. Paul & Duluth R. Co. 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144,

7 L. R. A. 722 (on reargument). We shall assume also, without deciding, the question that plaintiff may maintain this action separately against defendant for acts done by him as mayor of the village.

■ Navigability and nonnavigability mark the distinction between public and private waters. The state, in its sovereign capacity, as trustee for the people, holds all navigable waters and the lands under them for public use. Public use comprehends not only navigation by watercraft for commercial purposes, but the use also for the ordinary purposes of life, such as boating, fowling, skating, bathing, taking water for domestic or agricultural purposes, and cutting ice. Sanborn v. People's Ice Co. 82 Minn. 43, 84 N. W. 641, 51 L. R. A. 829, 83 A. S. R. 401; Lamprey v. State, 52 Minn. 181, 53 N. W. 1139, 18 L. R. A. 670, 38 A. S. R. 541; Doemel v. Jantz, 180 Wis. 225, 193 N. W. 393, 31 A. L. R. 969; 45 C. J., Navigable Waters, p. 490, § 141. *Cf.* In re Petition of Krebs, 213 Minn. 344, 6 N. W. (2d) 803.

A riparian owner's rights are qualified, restricted, and subordinate to the paramount rights of the public. As against the state, a riparian owner can exercise no dominion or make a valid grant of rights in waters adjacent to riparian lands or in the submerged lands under such waters. Absent exercise of the state's paramount rights, a riparian owner not only may build and maintain, for his own use and that of others claiming under him, wharves, docks, piers, and landing places on and in front of his land and extend the same to the point of navigability, even though beyond the low-water mark, but he also may transfer such rights, including those pertaining to particular areas of submerged lands. State v. Korrer, 127 Minn. 60, 148 N. W. 617, 1095, L. R. A. 1916C, 139; Gilbert v. Eldridge, 47 Minn. 210, 49 N. W. 679, 13 L. R. A. 411, *supra;* Hanford v. St. Paul & Duluth R. Co. 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144, 7 L. R. A. 722, *supra;* Miller v. Mendenhall, 43 Minn. 95, 44 N. W. 1141, 8 L. R. A. 89, 19 A. S. R. 219, *supra.* But any grant by the riparian owner transfers only rights

which are qualified, restricted, and subordinate to the paramount rights of the state. The exercise of the state's public rights does not deprive the riparian owner of any right, but merely regulates and limits the exercise of existing rights. The case of Bradshaw v. Duluth Imperial Mill Co. 52 Minn. 59, 53 N. W. 1066, *supra,* illustrates the practical application of the rules in question. There the riparian owner platted and sold riparian uplands on Lake Superior and the submerged lands in the adjoining waters. Certain shore and adjacent submerged lots were conveyed to defendant. Other submerged lots lying beyond and in front of defendant's were conveyed to plaintiff. The city of Duluth, pursuant to statutory authority, established a harbor and dock line just inside the lands conveyed to plaintiff. Defendant filled in its submerged lands out to the harbor and dock line thus established and made valuable improvements thereon. Thereafter, the city changed the location of the harbor and dock line by establishing it at a point beyond plaintiff's lands. Defendant commenced to extend its improvements upon plaintiff's submerged lands to reach the new harbor and dock line. We held in effect that the riparian owner could transfer and his grantee could enjoy the use of the submerged lands, subject to the paramount right of the state to regulate the use of the waters over the submerged lands to secure to the public the uses of which the same were susceptible, and that the state's power of regulation was a continuing one, which was not exhausted by a single exercise thereof. The consequence was that when the harbor and dock line was between defendant's and plaintiff's submerged lands plaintiff had no right to use his submerged lands inconsistent with the public right of navigation established by the location of the harbor and dock line, and that defendant then had the right to fill in its submerged lands and build out to the line; and that, when the line was relocated beyond plaintiff's lands, plaintiff's right to use his lands was revived, free from the restriction resulting from the original location of the line, and that he then had the exclusive right to use and

occupy the same. We held that plaintiff was entitled to enjoin defendant from using plaintiff's lands to gain access to the relocated harbor and dock line. Practically every phase of the question is covered by the exhaustive opinion of Mr. Justice Mitchell, two excerpts from which are particularly pertinent (52 Minn. 64, 53 N. W. 1068):

"It has been decided over and over again by this court that the right of the riparian owner to improve, reclaim, and occupy the submerged land in front of his shore estate to the point of navigability is a vested property right, which cannot be taken away, even by the state for a public use, without compensation.

\* \* \* \* \* \*

"Of course the private rights of the plaintiff were subordinate to the public right of navigation, and it was in the power of the state, as trustee for the public, to determine how far these waters were needed for purposes of navigation, and to fix the line of navigability, beyond which it would not be permissible for the owner of the shore estate to reclaim and occupy for private purposes. *But the establishment of a dock line neither creates nor destroys rights, but merely regulates and limits the exercise of existing rights. Plaintiff's rights of property in the lots in question were not divested by either the location or change of location of the dock line.* So long as the old line remained in force, of course he could not use the lots for any purpose inconsistent with the right of navigation in the waters over them, but when the line was changed this limitation was removed, and the establishment of the new line was authority, as well as an invitation to him from the state, to fill in and build out to that line, or as far in that direction as his property extended." (Italics supplied.)

Therefore, the riparian rights of Gibson and everyone claiming under him were subject to regulation in the interest of the public use of the waters in question.

We have not overlooked the fact that the power of congress to regulate navigable waters is paramount to that of the state. See

Fish v. C. G. W. R. Co. 125 Minn. 380, 147 N. W. 431. Here, congress has not asserted its jurisdiction. Hence, for present purposes, its right to do so is not important.

■ It is not essential that the state itself should exercise its powers to regulate navigable waters. The state may delegate its powers over navigable waters to agents selected by it to act in a representative capacity in performing its public functions. Such delegations of power to boom corporations have been sustained. Heiberg v. Wild Rice Boom Co. 127 Minn. 8, 148 N. W. 517; Osborne v. Knife Falls Boom Corp. 32 Minn. 412, 21 N. W. 704, 50 Am. R. 590. The state may delegate governmental functions to municipal corporations. Schulte v. Fitch, 162 Minn. 184, 202 N. W. 719. In principle, there is no reason why a delegation of its powers over navigable waters could not be made to a village. In the Duluth Harbor cases, Bradshaw v. Duluth Imperial Mill Co. 52 Minn. 59, 53 N. W. 1066; Hanford v. St. Paul & Duluth R. Co. 43 Minn. 104, 42 N. W. 596, 44 N. W. 1144, 7 L. R. A. 722; and Miller v. Mendenhall, 43 Minn. 95, 44 N. W. 1141, 8 L. R. A. 89, 19 A. S. R. 219, *supra,* it was assumed as a matter of course that such a delegation of power could be made by the state to a city— the city of Duluth. In Farnum v. Johnson, 62 Wis. 620, 22 N. W. 751, it was held that the state could delegate to a village its powers to regulate navigable waters by a statute identical in substance with L. 1885, c. 145, § 21, subd. 26th. See Illinois Cent. R. Co. v. Illinois, 146 U. S. 387, 13 S. Ct. 110, 36 L. ed. 1018. The statute in question, in the respects therein stated, lawfully delegated to the village the state's power over navigable waters.

■ The regulations in question have a fourfold aspect: (1) The requirement that all boats dock only at the village dock; (2) the prohibition of anchoring in adjacent waters and docking upon any other part of the park lands; (3) the requirement that the dock be used only by those paying the two-dollar fee per year for the use of a boat slip; and (4) the roping off of a bathing beach, thereby securing the part roped off for the exclusive use of bathers and preventing boating thereon.

It must be obvious to everybody that the indiscriminate use of such a small area of water as is here involved by boats (there were permits issued for the use of 28 boat slips at the dock) and by bathers is apt to endanger the life and limb of those engaged in such uses and to give rise to clashes of interests, confusion, disorderly brawling, and breaches of the peace. The suppression of such evils is sufficient reason for regulation.

The power to regulate the use of navigable waters involves an exercise of the police power, under which rules may be prescribed to insure to all the equal enjoyment of public rights and to prevent and to suppress the clashing of private interests and resulting public disorder. In Osborne v. Knife Falls Boom Corp. 32 Minn. 412, 21 N. W. 704, 50 Am. R. 590, we sustained a statute conferring on a boom corporation the exclusive right, as against the rights of riparian owners and all others who might otherwise use a navigable stream, to take, drive, float, separate, and deliver all logs and to charge the owners thereof toll for such services. We there pointed out that, absent regulation, there would be a clashing of interests with respect to rights of floatage and use of the waters and a resulting confusion that might well prevent reasonable enjoyment of such rights by all. We said (32 Minn. 419, 21 N. W. 707):

"Who is to fix upon the just and proper compromise of these conflicting interests? Obviously, the legislature,—that department of government which, in the exercise of a lawmaking and a police power, prescribes the rules by which the use of public highways in general is regulated, * * * and save as controlled by paramount law—that is to say, in this instance, by our state constitution or enabling act—the discretion of the legislature in the premises is practically unlimited. It may enact laws prescribing the manner in which the common right of floatage shall be enjoyed. It may determine what means shall be adopted, and by what agency, to secure results which, in its judgment, are the best and fairest practical compromises of conflicting interests,—the best attainable

good of all concerned. * * * In the exercise of its legislative discretion, it may authorize suitable means and instrumentalities to secure this end to be provided and employed by a private person or by a corporation, and it may prescribe what these means and instrumentalities may be,—as booms, dams, piers, sluiceways, —and what use may be made of them, and, in general, in what manner the business shall be conducted."

That power, as the opinion in the Osborne case points out, is commonly exerted with respect to highways. *Cf.* City of St. Paul v. Smith, 27 Minn. 364, 7 N. W. 734, 38 Am. R. 296, where we upheld an ordinance requiring hacks at union depots to operate from designated stands during certain periods of the day.

Under the provisions of L. 1885, c. 145, § 21, subds. 8th, 11th, 26th, and 28th, quoted *supra,* authorizing any village to establish harbor and dock limits and regulate the location, construction, and use of piers, docks, wharves, and boathouses on navigable waters; to establish and improve public parks; to control and protect its property; and to adopt police regulations for the government and good order thereof, the village had the power to build and maintain a public boat dock on its park property; to require all persons to refrain from anchoring in adjacent waters or docking their boats except at the public docks; to charge a reasonable fee for the facilities thus provided; and to set aside for a bathing beach part of the shore lands of the park and the waters in front thereof.

Authority to erect and maintain a boat dock on park lands adjacent to navigable waters as a reasonable means for the use and enjoyment of the park and adjacent waters is implied in the power to establish and to improve parks. State ex rel. Johnson v. Brown, 111 Minn. 80, 126 N. W. 408. The village had the power to erect and maintain the dock in question.

The village had the power to require all boats to use the village dock. A statutory grant to a municipality of power to establish harbor and dock lines and to regulate the location, construction,

and use of piers, docks, wharves, and boathouses on any navigable waters and to fix rates of wharfage comprehends authority to adopt regulations for the use of such waters. Under similar grants of power, a municipality has the power to require certain kinds of watercraft to use specified wharves and docks, Roosevelt v. Godard, 52 Barb. (N. Y.) 533; Hecker v. New York Balance Dock Co. 24 Barb. (N. Y.) 215; Municipality No. One v. Kirk, 5 La. Ann. 34; Farnum v. Johnson, 62 Wis. 620, 22 N. W. 751, *supra;* and to require all vessels to use its wharves and docks. Packet Co. v. Catlettsburg, 105 U. S. 559, 26 L. ed. 1169; City of Keokuk v. Keokuk Northern L. P. Co. 45 Iowa 196; City of Dubuque v. Stout, 32 Iowa 80, 7 Am. R. 171. The authorities just cited hold that, as an incident to such regulations, a municipality may prescribe penalties for violation thereof. In principle, such regulations are no different from those sustained in Osborne v. Knife Falls Boom Corp. 32 Minn. 412, 21 N. W. 704, 50 Am. R. 590, *supra,* requiring riparian owners and others to use the booms of a private corporation to take, drive, float, separate, and deliver their logs.

Plaintiff had no right as against the regulations adopted by the village to dock his boat on lands owned by the village. True, the village's title to such lands was acquired subject to the riparian rights of plaintiff and others claiming under a common owner who platted the land. But, as has been pointed out, the riparian rights of all concerned were subject to the paramount rights of the public to public use of the waters and to the power of the state to adopt reasonable regulations to secure such uses to the public. Absent regulation prescribing places for docking and anchoring, boats may be anchored at any place where such a use will not interfere with navigation, except, of course, that privately owned shore lands cannot be so used. Winans v. Northern States Power Co. 158 Minn. 62, 196 N. W. 811. Here, however, the ordinance prohibits docking and anchoring on other property owned by the village. The power to compel navigators to use a municipally owned dock rather than municipally owned land is no different in principle than that to compel the use of a municipally

owned rather than a privately owned dock. In either case regulation prescribing the place to dock rests upon the right to prescribe rules to secure to the public the public uses of which the waters are susceptible and to preserve public order. A municipality under its power to regulate navigable waters may require that all boats use a municipally owned dock to the exclusion of shore land, even though such lands are privately owned and the operators of boats have acquired the right to dock there. Packet Co. v. Catlettsburg, 105 U. S. 559, 26 L. ed. 1169, and City of Dubuque v. Stout, 32 Iowa 80, 7 Am. R. 171, *supra*. That the riparian rights pertain to a municipally owned park rather than privately owned lands makes no difference. The point is that riparian rights must yield to the governmental power to regulate. *Cf.* Ewing v. City of Minneapolis, 86 Minn. 51, 90 N. W. 10, where we held that a municipality owning a public park with a dock on a navigable body of water had authority to adopt regulations governing the right to use the same and to entirely prohibit any use thereof for docking privately owned watercraft.

Here the village had the power to make a reasonable charge for the use of its dock. A charge may be made for the use of a facility furnished as an incident of regulating the use of navigable waters. Osborne v. Knife Falls Boom Corp. 32 Minn. 412, 21 N. W. 704, 50 Am. R. 590, *supra;* Heiberg v. Wild Rice Boom Co. 127 Minn. 8, 148 N. W. 517. In analogous cases it has been held that stalls in a public market may be leased to facilitate its use. City of Dubuque v. Miller, 11 Iowa 583; Swayze v. City of Monroe, 116 La. 643, 40 So. 926; Fonte v. Fisher, 138 Md. 663, 114 A. 703; State v. Burkett, 119 Md. 609, 87 A. 514, Ann. Cas. 1914D, 345; Wartman v. City of Philadelphia, 33 Pa. 202. In numerous cases it has been either assumed or held that a municipality or its concessionaire may charge a reasonable fee for the use of a facility furnished at a public park. St. John v. City of St. Paul, 179 Minn. 12, 228 N. W. 170 (use of bathing towels, lockers, etc., at bathing beach); Booth v. City of Minneapolis, 163 Minn. 223, 203 N. W. 625 (privilege of playing on municipal golf course); Bailey

v. City of Topeka, 97 Kan. 327, 154 P. 1014, L. R. A. 1916D, 491 (use of boats); Longwell v. Kansas City, 199 Mo. App. 480, 203 S. W. 657 (riding on ponies); Campbell v. Town of Hamburg, 156 Misc. 134, 281 N. Y. S. 753 (use of lockers). Consequently, the village had the power to charge an annual fee for a permit to use the dock. See Keokuk v. Keokuk Northern L. P. Co. 45 Iowa 196; and Farnum v. Johnson, 62 Wis. 620, 22 N. W. 751, *supra;* 1 Farnham, Waters and Water Rights, § 119, p. 570.

The roping off of a bathing beach for the exclusive use of bathers was a reasonable regulation under the circumstances. Ample provision was made for taking care of the needs for boating, the only other public use shown here. Since one of the objects of regulation is to secure the orderly use of public waters, it is proper to ordain where, when, and how the several uses of which the waters are susceptible shall be enjoyed. For example, during certain reasonable times navigable waters may be devoted to the taking of spawn to the exclusion of other uses such as logging. State v. Tower Lbr. Co. 100 Minn. 38, 110 N. W. 254. A part of a navigable body of water may be devoted to one public use to the exclusion of others. Schmidt v. Gould, 172 Minn. 179, 215 N. W. 215 (reservation of waters for propagation of fish to the exclusion of the right to fish); Commonwealth v. Weatherhead, 110 Mass. 175; People v. Silberwood, 110 Mich. 103, 67 N. W. 1087, 32 L. R. A. 694; 1 Farnham, Waters and Water Rights, p. 653, § 140. It has been assumed in numerous cases that a part of navigable waters may be set aside for bathing beaches. See St. John v. City of St. Paul, 179 Minn. 12, 228 N. W. 170, and State ex rel. Johnson v. Brown, 111 Minn. 80, 126 N. W. 408, *supra.* Bathing being a recognized public use, it therefore follows that under the principles stated a part of public waters may be used exclusively for that purpose.

While the village, in virtue of its ownership of the park fronting on the lake, is a riparian owner, Troska v. Brecht, 140 Minn. 233, 167 N. W. 1042, its power to adopt the regulations in question stems not from its rights as a riparian owner, but from the stat-

ute which delegates to it as a governmental agency of the state regulatory power over navigable waters. The regulations have their basis not in property rights, but in governmental power, to which all riparian rights are subject.

Our conclusion is that all the regulations in question are lawful exercises of the village's governmental power. Consequently defendant's acts were not wrongful, and he is not liable.

Affirmed.

