# CASES DETERMINED

IN THE

# SUPREME COURT OF ARKANSAS

## MILTON v. STATE.

### Opinion delivered May 10, 1920.

FISH—SEINING IN "WATERS OF THE STATE."—Acts 1915, page 464, § 18, making it unlawful to fish with a seine, net, trap or other device of that character "in any of the waters of this State," does not apply to a lake situated wholly on land privately owned and having no connection with "waters of this State."

Appeal from Cross Circuit Court; *R. E. L. Johnson,* Judge; reversed.

*Killough, Lines & Killough,* for appellant.

1. The court erred in holding the lake in question to be included in the term "waters of this State." This was a private lake or pond, and the State had no right or title to the fish in a private lake or pond and no right to regulate the taking of fish in such. Especially is this so where the lake is in no way connected with any other body of water. The fish were a product of the lands owned by the appellant's lessors and belonged to them absolutely as their individual property, and appellants were not guilty of unlawful fishing under Acts 1915, p. 464. 140 U. S. 414; 190 *Id.* 452; 71 Ark. 390; 76 *Id.* 44; 35 N. Y. 454; 19 Cyc. 999; 43 Ill. 477; 92 Am. Dec. 146; 11 R. C. L. 1044; 11 R. C. L. 1017 and notes; 60 L. R. A. 512; 59 N. H. 256; 47 Am. Rep. 199; 19 Cyc. 1014; 31 N. E. 115.

2. Any attempt by the State to control appellant's right to the fish in this privately owned lake is a violation of the Constitution of the United States and the State. 113 U. S. 27; 73 Ark. 236; 75 *Id.* 542.

*John D. Arbuckle,* Attorney General, and *J. B. Webster,* Assistant Attorney General, for appellee.

Appellants were convicted under Acts 1915, No. 124, § 18. The State has general title to and is the owner of, at least for the purpose of regulation and control, all fish within its borders wherever situated. 73 Ark. 236; 161 U. S. 519; 56 Ark. 270; 110 *Id.* 206; 117 *Id.* 193; 88 *Id.* 571.

McCULLOCH, C. J.   Appellant is charged with the offense of unlawful fishing, in violation of the statute which makes it unlawful to fish with a seine, net, trap or other device of that character ''in any of the waters of this State.'' Acts 1915, p. 464.

The case was tried before the court sitting as a jury on an agreed statement of facts, in which it was shown that appellant put out nets in a certain inland lake for the purpose of catching fish. The description of the body of water in which the fishing was done and the circumstances and method thereof is set forth in the agreed statement of facts, as follows:

''It is further agreed that said lake is a body of water about one mile and a half or two miles long and of an average of about one hundred yards in width. That said lake is not a meandered body of water, and that same has been duly surveyed and is wholly the property of Press Cogbill and Wess Porter.

''It is further agreed that said lake is entirely surrounded by cleared and cultivated land and is all under fence.

''It is further agreed that said lake is in no way connected with any navigable stream, or any other stream and that no water from a navigable stream or any other stream runs into said lake except when a break in the levee occurs, and that no water has been in such lake from navigable stream since the year 1913, caused by a break in the levee.

''It is further agreed that defendants for the years 1918 and 1919 and for many years prior thereto, have

rented said lake and paid annual rental therefor to said Wess Porter and Press Cogbill, and that the rent notes for the year 1918 are exhibited to the court.

"It is further agreed that said Press Cogbill and Wess Porter have for more than seven years last past paid taxes, State and levee, upon the land occupied by said lake."

The question presented is whether or not the body of water described is such as falls within the designation of the statute, "the waters of this State." We interpret the language of the agreed statement of facts to be, that Cogbill and Porter are the owners as tenants in common of the lands surrounding the lake, and are not separate owners. In other words, we find that the lake in question is an inland body of water wholly within the boundaries of certain owners, who hold title as tenants in common, and that it has no outlet or connection with any other body of water. In view of these facts, we are of the opinion that it does not fall within the terms, "in any of the waters of this State."

The purpose of the statute was to protect and preserve fish in the public waters or such privately owned waters as were connected with other streams or bodies of water, and not to a private pond or lake wholly on the premises of an owner or common owners, which is not connected in any way with another stream or body of water. The former statute of this State regulating the taking of fish (Kirby's Digest, section 3600), contained an express provision exempting from the application of the statute waters "wholly on the premises belonging to such person or persons using such device or devices." This provision was omitted from the statute now in force, but, as before stated, we think that the term, "in any of the waters of this State," when considered in the light of the obvious design of the statute, excludes privately owned waters having no connection with other streams.

There is an instructive opinion rendered by the Supreme Court of New Hampshire, in the case of *State* v.

*Roberts,* 59 N. H. 256, 47 Am. Rep. 199, a case involving the interpretation of a statute against fishing in public waters, where the court said:

"But while the Legislature has power to regulate and limit the time and manner of taking fish in waters which are public breeding places or passageways for fish, it has not assumed to interfere with the privileges of owners of private ponds having no communication through which fish are accustomed to pass to other waters. Such ponds, whether natural or artificial, are regarded as private property, and the owners may take fish therefrom whenever they choose, without restraint from any legislative enactment, since the exercise of this right in no way interferes with the rights of others."

It is unnecessary in the present case to pass on the question as to whether or not the Legislature has the power to regulate fishing in private ponds wholly on the premises of an owner, and we content ourselves merely by deciding the question as to whether or not such an attempt has been made in this statute.

In the case of *People* v. *Bridges,* 31 N. E. 115, 142 Ill. 30, 16 L. R. A. 684, the Supreme Court of Illinois dealt with a statute of that State prohibiting the use of seines for catching fish "upon any of the rivers, creeks, streams, ponds, lakes, sloughs, bayous and other water courses," in its application to a small inland lake near the Sangamon River, it being shown that there was a low place between the river and lake, by which, in times of high water frequently occurring, a passageway for fish was afforded. The court upheld the validity of that statute, but did so on the distinct ground that the statute expressly applied to privately owned bodies of water of that character and that there was a passageway for fish, at frequent intervals between the inland lake and the Sangamon River. In disposing of the matter, the court said:

"It being clear, as we think, that the statute is broad enough to include the pond or lake in question, and that

bodies of water of that character are within the legislative intent, the inquiry involving the greatest difficulty is whether, as applied to such bodies of water, the statute is obnoxious to any constitutional objection. The only objection of that character which seems to be suggested is that it is an undue and unwarranted interference with the property rights of the owner of the land upon which said pond or lake is situate. Fish, in streams or bodies of water, have always been classed by the common law as *ferae naturae,* in which the riparian proprietor or the owner of the soil covered by the water, even though he may have the sole and exclusive right of fishing in such waters, has at best but a qualified property, which can be rendered absolute only by their actual capture, and which is wholly divested the moment the fish escape to other waters. We are unable to see that there is anything in the situation or character of the pond or lake in question that takes it out of the rule. While said body of water has no continuous connection with the river situated but a few yards away, such connection is established during all periods of high water, and continues for a sufficient length of time to allow fish to pass into it, or the fish in the lake to escape therefrom. During such periods of high water, which occur once or twice, if not oftener, every year, and continue sometimes for several weeks, said lake, so far as the passage of fish to and from it is concerned, becomes, for all practical purposes, a part of the river. During these periods, as we may presume, migratory fish, passing up the river in search of proper places for depositing their spawn, are liable, for such purposes, to pass into this as into other bayous where the waters are quiet, but with this difference: that while, in case of ordinary bayous, which maintain their connection with the stream, the fish, after accomplishing their purpose, are at liberty to leave and go elsewhere, here, by the receding of the water, their exit is for the time being cut off, and they, as well as their progeny, are compelled to remain. As soon, however, as

another flood occurs—a thing which may happen at any season of the year—the fish thus impounded are at liberty to escape, and if they do so any qualified property the owner of the lake may have in them is at once divested.

"We are unable to see how the mere fact that said lake, instead of having a continual connection with the river, has such connection only during periods of high water, can have any essential bearing upon the rights which the owner of the soil has in the fish that happen for the time being to be in the lake. It undoubtedly greatly increases his opportunities for obtaining an absolute title by catching and reducing them to possession, but until he does so he has only the same and no better title to them than he would have if the lake were merely a bayou having uninterrupted connection with the river. It is impossible, therefore, to distinguish the present case from those arising in relation to other waters in the State to which the statute is applicable."

The distinction between the Illinois case and the case now before us is well marked. In this case the lake is not only wholly on the premises of the persons named, but it is also shown in the agreed statement of facts that it is in no way connected with any other stream and that there can be no contact with the waters of other streams, except in case of a break in the levee. The precise location of the lake in question is not described in the agreed statement of facts, but we may assume from the language used that the lake lies in that portion of Cross County which is within the boundaries of the St. Francis Levee District—an area which is protected from the waters of the Mississippi River by a levee extending along the bank of the river. We may take knowledge of the fact that the maintenance of the levee along the Mississippi River front in what is termed the St. Francis basin is a permanent enterprise, and is intended to afford immunity from the overflow of waters from the Mississippi River, and that it does afford such immunity, except at

rare intervals when the levee breaks, as is shown by the agreed statement of facts. This being true, it takes the case out of the application of the doctrine announced by the Illinois court in the case cited.

According to the facts of the case, as drawn from the agreement, this lake is entirely protected from the influx of other waters and no opportunity is afforded for the escape of fish into other waters. In this respect it is the same as if it were an artificial pond within a man's own premises. Fish within the waters of the lake are therefore in the exclusive possession of the owners of the land, and no one has a right to fish there without the consent of the owner, and there is no way for the fish to escape from the owner's possession.

The Attorney General contends that the decision of this court in the case of *State* v. *Mallory,* 73 Ark. 236, has controlling force of the present case, but we do not think so. In that case we were dealing with the question of a property owner's right to fish and hunt on his own premises, and we said it was a qualified right held subject to the State's regulatory power. It is true that in that case the agreed statement of facts showed that the fishing was done in a private pond, but the case involved the rights of the property owner with respect to hunting wild game, as well as fishing, and the opinion declared the general principles with respect to the right of the State to regulate hunting and fishing even on one's own premises. We did not undertake to define the extent to which the Legislature had gone in regulating fishing. The statutes at that time contained, as before stated, an express provision exempting the waters wholly on the premises of an owner from the operation of the statute.

Our conclusion therefore is that the circuit court erred in its decision that the facts of the case constituted a violation of the law. Judgment is reversed and the cause remanded for further proceedings.