Mr. Steven N. Wilson, Director Arkansas Game and Fish Commission 2 Natural Resources Drive Little Rock, Arkansas 72205
Dear Mr. Wilson:
This is in response to your request for an opinion on whether certain lakes are "waters of this State" for the purpose of the Arkansas Game and Fish Commission enforcing the boating safety laws. See A.C.A. §27-101-101 to -405 (Repl. 1994 and Supp. 1997).
Specifically, you note that "[t]he Commission has received many inquiries about the legal status of lakes situated in Bella Vista Village, Benton County and Hot Springs Village, Garland County. The bed of each lake in question is apparently owned by either Bella Vista Village or Hot Springs Village property owners associations (POAs); however, the surrounding riparian lands belong to separate private landowners. Also, each lake is connected to one or more flowing streams or bodies of water that run across properties belonging to separate landowners. The POAs restrict the use of the lakes to POA members and their guests only."
In my opinion the answer to your question is not entirely clear under Arkansas law, and could benefit from legislative or judicial clarification.
The relevant Arkansas statutes are found at A.C.A. §§ 27-101-101 to -405. That subchapter has been called a "comprehensive act with respect to the rules, operation, regulations and liability in the ownership and operation of watercraft. . . ." Garrett v. Galloway, 263 Ark. 460,565 S.W.2d 432 (1978). The original act giving rise to this subchapter was passed in 1959, and was apparently a model act passed by a number of states around that same time period. See Acts 1959, No. 453 and Parkerv. Price, 241 Ark. 940, 411 S.W.2d 12 (1967) (stating that "it is reasonably certain that our act stems from the model State bill mentioned in the report of the Committee on Interstate and Foreign Commerce. Boating laws enacted by all of our neighboring States are very similar to ours and further confirm the belief that ours is a model act.")
The provisions of the Act apply to activities conducted on "waters of this state." See, e.g., A.C.A. § 27-101-102 (a) ("The provisions of subchapters 1-3 of this chapter and of other applicable laws of this state shall govern the operation, equipment, numbering, and all other matters relating thereto whenever any vessel shall be operated on thewaters of this state. . . ."). (Emphasis added.) The phrase "waters of this state" was originally defined in the 1959 act as meaning "any waters within the territorial limits of the State of Arkansas." See Acts1959, No. 453, § 2 (4). It was clear that this definition would have embraced public or private lakes. See, e.g., Kuester v. State,191 Neb. 680, 217 N.W.2d 180
(1974) (term "any waters within the territorial limits of Nebraska" as used in the State Boat Act includes privately owned lakes). Since its passage in 1959, however, Act 453 has been amended several times. One amendatory act was Act 122 of 1987. It was entitled:
 AN ACT to Amend Various Sections of Act 453 of 1959, As Amended [Ark. Stat. 21-221 Et. Seq.], the Arkansas Boating Safety Act to Require All Vessels Propelled by Sail or Machinery in Excess of Ten Horsepower to be Registered in This State; to Increase Boat Registration Fees; to Grant Concurrent Jurisdiction to County Sheriffs, State Police and Game and Fish Commission Officers for Enforcement; to Amendment Section 1 of Act 395 of 1973 [Ark. Stat. 21-248]; to Repeal Section 1 of Act 442 of 1965; and for Other Purposes.
One of the changes made by Act 122 of 1987 was to the definition of "waters of this State." The 1987 act inserted the word "public" into the definition, which now reads: "`waters of this State' means any public
waters within the territorial limits of the State of Arkansas." A.C.A. §27-101-103(4). (Emphasis added.) There is no indication in the act as to the legislative intention of this insertion.
The answer to your question, in my opinion, turns upon whether the lakes you mention (those in Bella Vista and Hot Springs Village) are "public waters within the territorial limits of the State of Arkansas" for purposes of the Game and Fish Commission's power to enforce the boating safety laws.[1] There is no further definition of the term "public waters" in the subchapter. This term has, in some contexts, been held synonymous with the term "navigable waters." See, e.g., Nelson v.DeLong, 213 Minn. 425, 7 N.W.2d 342 (1942); Webb v. Board of Commr's ofNeosho County, 124 Kan. 38, 257 P. 966 (1927); Piazzek v. DrainageDistrict No. 1 of Jefferson County, 119 Kan. 119, 237 P. 1059 (1925); andLamprey v. Metcalf, 52 Minn. 181, 53 N.W. 1139 (1893). Cf. also Garrettv. Galloway, supra (referring in dicta to Act 453 of 1959's application to "state navigable waters). In other contexts, the term has been defined as those waters "capable of sustaining public use." See, e.g., Titrud v.Achterkirch, 298 Minn. 68, 213 N.W.2d 408 (1973). I cannot come up with a controlling definition of this term where the legislature has failed to provide one. In my opinion, however, the term "public waters" as used in A.C.A. § 27-101-103(4) would not be construed so restrictively as to be synonymous with navigable waters. Cf. Meriwether Sand Gravel v. Stateex rel. Attorney General, 181 Ark. 216, 26 S.W.2d 57 (1930) (state's regulatory powers over waters, at least in a pollution context, not limited to navigable waters).
You note that in the opinion of the Commission's legal staff, the term "public waters" should be interpreted consistently with the definition of "waters of this state" given at A.C.A. § 15-43-301(2). That definition is found in the subchapter containing various statutes relating to fishing. "Waters of this state" is defined at A.C.A. § 15-43-301(2) as meaning:
 all streams, lakes, ponds, sloughs, bayous, marshes, or other waters, wholly or in part within this state. Provided, that waters which are confined within a pond, tank, or lake, situated entirely on the premises of a single owner[2] and which, except under abnormal flood conditions, are in no way connected by water or with any other flowing stream or body of water, or with any other body of water not situated on the premises of the owner, are declared to be privately owned waters and shall not be construed to be included in the expression `waters of this state.'
The first sentence of this definition was passed in 1943 just prior to the creation of the present Game and Fish Commission. See Acts 1943 No. 146, § 14. The proviso excluding certain privately held lands was added in 1955, after the creation of the Commission. See Acts 1955 No. 152, § 1. It is noted in memorandums enclosed with your request that this exclusion from the definition of "waters of this state" has been held unconstitutional in Fowler v. State, 283 Ark. 325, 676 S.W.2d 725
(1984). After the adoption of Amendment 35 to the Arkansas Constitution, (creating and empowering the Game and Fish Commission) the legislature does not have the power to prohibit the Commission from regulating the sale of fish from private waters. Id. The memorandums enclosed with your request, however, nonetheless advocate the usage of this definition (A.C.A. § 15-54-301(2)) in construing the phrase "waters of this state" for purposes of the boating safety laws found at A.C.A. §§ 27-101-101 to -405.[3]
The reason for the exclusion of isolated privately owned waters for purposes of the fishing laws is explained in Milton v. State, 144 Ark. 1,221 S.W. 461 (1920). "The purpose of the statute [prohibiting fishing with a net, seine or trap] was to protect and preserve fish in the public waters or such privately owned waters as were connected with the other streams or bodies of water, and not to a private pond or lake wholly on the premises of an owner or common owners, which is not connected in any way with another stream or body of water." Id. at 3. The court cited authority from other jurisdictions discussing whether the body of water in question was a "passageway" for fish, and reasoned that if no opportunity is afforded for the escape of fish to other waters, the fish are in the exclusive possession of the owners of the land.
It is awkward, in my opinion, to apply the rationale for this definition in a public safety context. One would expect that the legislature's purpose in defining which waters are covered by the boating safety laws would have some relation to the health and safety of the public, rather than to the preservation of fish. The legislative purpose or public policy for excluding a certain category of waters from the fishing laws may not support the exclusion of the same waters for public safety purposes. Even a privately owned lake, with no "passageways" for fish to escape might possess such a size and quantity of public usage to warrant safety enforcement. I cannot conclude, therefore, that the definition of "waters of the state" found at A.C.A. § 15-54-301(2) is the controlling definition for purposes of enforcing the boating safety laws found at A.C.A. § 27-101-101 to -405. The latter subchapter has its own definition of "waters of this state." See A.C.A. § 27-101-103(4). The problem is that this definition ambiguously refers to "public waters."
In my opinion, therefore, legislative or judicial clarification would be necessary in order to definitively decide on which bodies of water Game and Fish boating safety enforcement jurisdiction attaches. In the interim, the Game and Fish Commission has the authority to interpret and apply the statutes under which it operates. It also has the authority to promulgate rules and regulations to enforce the provisions of A.C.A. §27-101-101 to -405.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
WINSTON BRYANT Attorney General
WB:ECW/cyh
[1] It should be noted in that two places in the applicable subchapter, reference is made to "any waters within the territorial limits" of a political subdivision. See A.C.A. § 27-101-107(b) and (c)(2). The word "public" was not inserted in these instances. The former subsection allows a local law enforcement unit to request special rules and regulations for "any waters within its territorial limits." The latter provision authorizes the Game and Fish Commission to make special rules and regulations for "any waters within the territorial limits of any subdivision of this state where the local law enforcement office has not established a water patrol." The impact of the 1987 amendment on these provisions is not clear.
[2] "Single owner" is defined as including and individual person, partnership, corporation, or several persons who as tenants in common own the entire premises in question.
[3] The memorandums enclosed with your request indicate that no similar constitutional infirmity would attend the legislature's exclusion of certain private lands from the Commission's authority to enforce the boating safety laws. "While the authority of the Commission to regulate for the conservation, preservation and protection of the wildlife resources of the State is complete within itself, it does not extend to regulation for public safety purposes. When it chooses to enforce laws passed by the legislature for the safety of the public, such as the boating safety laws and the hunter education laws, the Commission's authority is limits to the specific language of the laws themselves, and the definitions and interpretations included therein." Game and Fish Memorandum dated 11-27-97, entitled "Public Waters."